IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-155-BO

| | |
|---|---|
| LATONYA JACKSON<br>　　Plaintiff,<br><br>v.<br><br>WILMINGTON HOUSING<br>AUTHORITY, *et al.*,<br>　　Defendants. | **ORDER** |

This cause comes before the Court on defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). [DE 44]. For the reasons discussed below, defendants' motion is GRANTED.

## BACKGROUND

Plaintiff, proceeding *pro se*, filed this action against the Wilmington Housing Authority ("WHA") and several of its officers, board members, and employees for alleged violation of her civil rights under 42 U.S.C. § 1983. Specifically, plaintiff alleges that defendants improperly terminated her application for the Section 8 Housing Choice Voucher Program. Plaintiff, with leave of the Court amended her complaint bringing suit against defendants Richichi and Johnson in their individual capacities in addition to their official capacities. [DE 42]. Defendants now move for judgment on the pleadings as to all claims. [DE 44].

## DISCUSSION

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings after the pleadings are closed, and within such time as not to delay the trial. FED. R. CIV. P. 12(c). Judgment on the pleadings is proper when, taking the allegations in

the pleadings as true, the non-moving party can prove no set of facts in support of its claim that would entitle it to relief. *Bruce v. Riddle*, 631 F.2d 272, 273–74 (4th Cir. 1980); *see also Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002) (explaining that a motion for judgment of the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss). In resolving a motion for judgment on the pleadings, the Court may rely on admitted facts in the complaint and answer as well as documents attached to the complaint and answer. *Bradley v. Ramsey*, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). Documents "integral to and explicitly relied on in the complaint" can be considered if the authenticity of the documents is not challenged. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

A motion for judgment on the pleadings requires the Court to determine whether the complaint is legally and factually sufficient. *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 723–24 (M.D.N.C. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The Court therefore accepts the factual allegations in the complaint as true, but need not accept legal conclusions drawn from the facts. *Id.* Additionally, the Court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Giarrantano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

I. OFFICIAL CAPACITY CLAIMS AGAINST INDIVIDUAL DEFENDANTS.

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quotation omitted). The Fourth Circuit has held that official capacity claims are essentially the same as a claim against the entity, and should be dismissed as duplicative when the entity is also

2

named as a defendant. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). North Carolina courts have followed this line of reasoning. *See May v. City of Durham*, 525 S.E.2d 223, 229 (N.C. App. 2000) (holding official capacity suit to be a claim against the office of the employee rather than the particular individual occupying the office and therefore when a suit names the entity and individuals in their official capacity who work for the entity, the official capacity claims are redundant). Here, the WHA is named in addition to the official capacity claims against defendants Johnson, Richichi, Krause, Mack, Hovis, Land, and Hollifield who all work for the WHA. Therefore, the official capacity claims are redundant, duplicative, and unnecessary and judgment on the pleadings is appropriately granted in favor of defendants.

II. STATE FRAUD AND LIBEL CLAIMS.

Defendants argue that plaintiff's state law fraud and libel claims are subject to dismissal because the complaint fails to sufficiently plead the elements of fraud and libel.

A. Fraud.

It appears to the Court that plaintiff only alleges her claims for fraud and libel against defendant Johnson. The elements of actionable fraud are: "1) a false representation or concealment of a material fact, 2) reasonably calculated to deceive, 3) made with intent to deceive, 4) which does in fact deceive, and which 5) results in damage to the injured party." *Hunter v. Spaulding*, 388 S.E.2d 630, 634 (N.C. App. 1990). "A complaint charging fraud must allege these elements with particularity." *Id.* "[I]n pleading fraud, the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 273 S.E.2d 674, 678 (N.C. 1981). In order to survive this motion, the complaint "must allege with particularity all material facts and circumstances

3

constituting the fraud." *Hunter v. Guardian Live Ins. Co. of Am.*, 593 S.E.2d 595, 598 (N.C. App. 2004).

Here, plaintiff's fraud claim is based entirely on defendant Johnson "present[ing] to all involved, an email sent from plaintiff as cause for termination." [DE 42 ¶¶ 39–40]. However, plaintiff fails to allege all of the elements of fraud against Johnson. Plaintiff fails to allege that she was deceived by any false representation and that the false representation caused damage to her. Although it is clear from the pleadings that Johnson misinterpreted an email plaintiff wrote, there are no allegations that Johnson's misrepresentation did in fact deceive plaintiff. The complaint does not assert that plaintiff relied upon the misinterpretation. Further, it is clear that plaintiff cannot allege that she was deceived by the misinterpretation as plaintiff alleges that she sent a letter requesting a hearing and denying any admissions of signing forms fraudulently. Finally, plaintiff alleges that she was deprived of her section 8 voucher property interest and $1000, but fails to allege how Johnson's misinterpretation was tied to this as she also alleges that she requested a hearing and received a hearing on the issue. Because plaintiff has failed to allege with particularity all of the elements of fraud against Johnson, judgment on the pleadings in favor of Johnson is granted.

    B.    Libel.

Plaintiff alleges that Johnson falsely claimed plaintiff had committed fraud and that she admitted to fraudulently signing forms as the basis for her libel claim. To qualify as libelous *per se*, "an allegedly defamatory statement must meet certain well-established criteria." *Farmer v. Lowe's Companies, Inc.*, 188 F. Supp. 2d 612, 615–16 (W.D.N.C. 2001). North Carolina courts have "defined libel *per se* as a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person

4

with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Id.* (quoting *Aycock v. Padgett*, 516 S.E.2d 907, 909 (N.C. app. 1999).

Therefore, to establish a claim for libel *per se*, a plaintiff must show that: "(1) defendant spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business, or means of livelihood or hold him up to disgrace, ridicule, or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." *Cummings v. Lumbee Tribe of N.C.*, 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008) (citing *Friel v. Angell Care, Inc.*, 440 S.E.2d 111 (N.C. App. 1994).

Here the complaint does not allege that Johnson's statements tended to prejudice plaintiff in any respect or held plaintiff up to disgrace, ridicule, or contempt. The complaint also does not allege that the statements were published or communicated to and understood by a third person. There are no specifics about what was allegedly said, to whom it was said, or when it was said. Plaintiff has failed to sufficiently plead all of the elements of libel against Johnson. Accordingly, judgment on the pleadings is granted in favor of Johnson.

III. FEDERAL CLAIMS.

Plaintiff alleges that defendants have violated the Due Process Clause of the Fourteenth Amendment, Chapter 8 of Title 42 of the United States Code, and its implementing regulations including 24 C.F.R. § 982.555 in her first and second claims. In claims 5, 6, and 7, plaintiff appears to allege that the WHA did not follow its own procedural guidelines in handling her complaint.

In order to seek redress through 42 U.S.C. § 1983, a plaintiff must assert a violation of a federal right, not merely a violation of federal law. *Blessing v. Freestone*, 520 U.S. 329, 340

(1997). Courts consider three factors when determining whether a statutory provision gives rise to a federal right: (1) Congress must have intended that the provision in question benefits the plaintiff; (2) the plaintiff must demonstrate that the right claimed to be protected is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the States – the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms. *Id.* at 340–41.

Here the federal regulations upon which plaintiff bases her claim do not impose a binding obligation on defendants as to plaintiff. The complaint asserts numerous times that plaintiff's claims are based on defendants' violation of 24 C.F.R. § 982.555. This federal regulation specifies when a hearing is required for participant families in the Housing Choice Voucher ("HCV") Program, formerly known as the Section 8 Program, and provides that the public housing agency ("PHA") is not required to provide a participant family an opportunity for an informal hearing for several reasons including "discretionary administrative determinations by the PHA" and "a PHA determination not to approve an extension or suspension of a voucher term. 24 C.F.R. § 982.555(b)(1) and (4). A participant or participant family is "[a] family that has been admitted to the PHA program and is currently assisted in the program. The family becomes a participant on the effective date of the first housing assistance payments ("HAP") contract executed by the PHA for the family (first day of initial lease term)." 24 C.F.R. § 982.4(b). An applicant or applicant family is "[a] family that has applied for admission to a program but is not yet a participant in the program." *Id.*

Here, plaintiff has not alleged that the WHA ever executed a HAP contract for plaintiff or her family. Plaintiff's allegations are based solely on the termination of the Voucher. Per the terms of the Voucher, "if the PHA approves the unit, the PHA will enter into a [HAP] contract

6

with the owner to make monthly payments to the owner to help the family pay the rent." [DE 43-1 § 1(A)]. The Voucher also provides that, "[a]fter receiving the request for tenancy approval and a copy of the lease, the PHA will inspect the unit," and that the PHA "may not give approval for the family to lease the unit or execute the HAP contract" until it has determined that the program requirements are met. [DE 43-1 § 3(D)]. In the complaint plaintiff has not alleged, and cannot allege, that she was a participant in the HCV program per the regulations. Therefore, plaintiff was not entitled to an informal hearing regarding the termination of her Voucher. 24 C.F.R. 982.555.

Further, because plaintiff's voucher had already expired, she was not entitled to an informal review for applicants to the HCV program. A family that applies for or receives a voucher "must supply any information requested . . . regarding family income and composition." 24 C.F.R. § 982.551(b)(2). "Any information supplied by the family must be true and complete." 24 C.F.R. § 982. 551(b)(4). In addition, an extension of the initial voucher term is discretionary under the federal regulations, and therefore, does not create a constitutionally protected property interest. *Burgess v. Alameda Hous. Auth.*, 98 F. App'x 603, 605 (9th Cir. 2004).

The pleadings in this case establish that plaintiff signed the Voucher on January 15, 2013, acknowledging the terms and conditions of the Voucher. [DE 43-1 at 1]. The WHA issued the Voucher on that day and it was set to expire on March 15, 2013. [*Id.*]. Because the HAP contract had not yet been signed at this point, plaintiff was an applicant to the HCV program at this time. On March 20, 2013, after plaintiff's Voucher had expired, plaintiff sent an email to defendant Johnson submitting new information concerning contributions that her sons would make to support her monthly income which is required to determine the calculation of plaintiff's rent under the Voucher. [DE 42 ¶ 5; DE 43-1 § 1(B)].

7

Consequently, based on the pleadings in this case, plaintiff did not provide true and complete information regarding her monthly income before the Voucher expired. Further, plaintiff has not alleged that she ever requested an extension of the Voucher term prior to its expiration on March 15, 2013. Because plaintiff had not provided complete and accurate information to the WHA before the expiration of the Voucher and because she did not request an extension of the Voucher term, plaintiff was not entitled to an informal hearing regarding the termination of the Voucher and her federal claims fail on this basis.

Even if plaintiff had been entitled to an informal review, the informal review process for an applicant is found in 24 C.F.R. § 982.554, and according to the allegations in the complaint, that process was abided by in the informal hearing that was held for plaintiff. The informal review process for applicants requires only that (1) the review be conducted by any person or persons designated by the PHA other than the person who made or approved the decision under review or a subordinate of this person; (2) the applicant must be given an opportunity to present written or oral objections to the PHA decision; and (3) the PHA must notify the applicant of the PHA's final decision after the informal review, including a brief statement of the reasons for the final decision. 24 C.F.R. § 982.554(b). All of those requirements are alleged to have been met here.

Because plaintiff was not entitled to an informal review, and even if she was entitled to an informal review, the April 5, 2013 hearing provided to plaintiff complied with the requirements for the informal review process, all of plaintiff's federal claims fail. Accordingly, judgment on the pleadings is granted in favor of defendants on counts 1, 2, 5, 6, and 7.

IV. QUALIFIED IMMUNITY.

Notwithstanding the failure of plaintiff's claims as to all defendants as discussed *supra* Parts I-III, the Johnson and Richichi are entitled to qualified immunity to the extent they are sued in their individual capacity under Section 1983. The purpose of qualified immunity is to ensure that government officials performing discretionary functions can "perform their duties free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991). Without qualified immunity, there is substantial risk that the fear of personal liability and harassing litigation will "unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Accordingly, government officials are entitled to qualified immunity for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Further, qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The qualified immunity analysis involves two questions: (1) whether the evidence establishes the violation of a constitutional right; and (2) whether the right was "clearly established" at the time of the events at issue. *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002).

The allegations in the complaint reveal that Johnson's sole involvement in this matter was her "termination" of plaintiff's Voucher, which had already expired. Based on plaintiff's own admissions in the complaint, plaintiff did not provide correct information to the WHA prior to the expiration of the Voucher. Johnson, the assistant director of the WHA's HCV program, informed plaintiff that she was terminated from the program. In informing plaintiff of that

decision Johnson may have misconstrued the words in plaintiff's email, but the law allows for mistakes and mistaken judgments. Regardless of that error, plaintiff was allowed a hearing on the status of the Voucher and allowed to present oral objections to the WHA's decision.

Richichi's sole involvement in the matter was her participation as one of the two hearing officers at the April 5, 2013 hearing to review the status of plaintiff's Voucher. That hearing complied with the applicable federal violations.

The pleadings in this case do not establish that Richichi or Johnson violated plaintiff's constitutional rights. Accordingly they are properly granted qualified immunity and judgment on the pleadings is awarded in their favor on all claims.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings [DE 44] is GRANTED. All claims are DISMISSED. The clerk is directed to enter judgment accordingly and close the file.

SO ORDERED, this 2 day of June, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE